GREAT SOUTHERN FIRE INSURANCE COMPANY *v.* BURNS & BILLINGTON.

Opinion delivered March 29, 1915.

1. FIRE INSURANCE—CONDITIONS IN POLICY—KNOWLEDGE OF INSURED—WAIVER.—Where a policy of fire insurance contained a stipulation that the same was to become void if the property was then or would become subject to a mortgage, and the insured had no knowledge of such a condition, the same being printed on the back of the policy, the insurance company will be held to have waived the condition.

2. FIRE INSURANCE—FAILURE TO PAY—PENALTY.—Plaintiff suffered a loss by fire, and agreed with the adjuster of the company in which he held a policy as to the amount of damage sustained. Later the

company denied all liability. *Held*, plaintiff having recovered judgment for the amount sued for was entitled to attorneys' fees and penalty under the statute.

Appeal from Craighead Circuit Court, Jonesboro District; *J. F. Gautney*, Judge; affirmed.

*Allen Hughes* and *W. W. Hughes*, for appellant.

1. There was a chattel mortgage on the rice insured, which the proof of loss admits. No agreement with respect to the mortgage was indorsed upon the policy, hence, under the provision in the contract, the policy was void, even if the mortgage had been satisfied before the loss. 62 Ark. 348.

2. The same result follows where the mortgage covers an undivided interest only. 71 Ia. 119; 32 N. W. 20; 88 Mich. 94; 50 N. W. 100; 19 Cyc. 758; 1 May on Insurance, § 291a.

3. It is the duty of the insured to know what his contract is, and he will be held to a knowledge of the conditions of his policy. The fact of his not having *seen* the policy will not excuse a want of such knowledge, in the absence of proof of an adequate reason for not seeing it. 71 Mich. 414; 39 N. W. 571; 15 Am. St. Rep. 275; 89 Tex. 404; 34 S. W. 915; 31 S. W. 566.

The law presumes that the parties contemplated insurance in usual form, under the standard policy, containing such conditions and limitations as are usual in such cases. 56 Pa. St. 256; 94 Am. Dec. 65; 76 Ia. 609; 41 N. W. 373; 94 U. S. 621; 50 O. St. 549; 22 L. R. A. 768; 35 N. E. 1060; 32 Minn. 458; 21 N. W. 552; 121 N. Y. 454; 8 L. R. A. 719; 24 N. E. 699; 106 Ala. 522; 17 So. 708.

4. There was no waiver. Where no inquiry is made and the insured says nothing, the acceptance of the policy carrying the standard stipulation as to incumbrances binds the parties. 2 Clement on Insurance, 155, 199; Ostrander on Insurance, § 26; 1 May on Insurance, § 294C; 63 Ark. 187; 13 Am. & Eng. Enc. of L. (2 ed.), 228; 68 Ill. App. 637; 168 Ill. 309; 106 N. W. 485; 71 N. W. 755; 89 Tex. 404; 40 L. R. A. 358; 105 Ia. 379; 31 S. W. 566; 85

Wis. 193; 59 S. E. 369; 86 Ala. 189; 55 Md. 233; 10 Fed. 232; 65 Fed. 165; 68 Mo. 127; 79 Mo. App. 1; 98 Ga. 464; 37 S. W. 1013; 82 Miss. 674; 136 Ala. 670; 32 Conn. 21; 115 N. Y. 279; 3 L. R. A. 638; 64 Ia. 101; 100 Ga. 97; 96 Ala. 508; 22 N. E. 229; 136 Ia. 674; 105 Ia. 379; 162 Fed. 447.

5. It was erroneous to adjudge a penalty and attorney's fee against appellant. On the day the judgment was rendered, plaintiffs, having originally sued for $4,500, amended the complaints reducing the demands to $3,413.34, and averring that more had never been demanded, which averment the face of the pleadings shows is untrue. There was no basis for the allowance of penalty and attorney fee. 92 Ark. 378; 93 Ark. 84.

*Hawthorne & Hawthorne, N. F. Lamb* and *Archer Wheatley,* for appellee.

1. Under the facts and circumstances shown in this record, a chattel mortgage existing at the time the policy is issued will not avoid the policy. If no inquiry is made by the agent of the insurer, and no misrepresentation made by the insured, any provision of the policy with reference to existing mortgages will be deemed to have been waived. The decided weight of authority sustains this view. 5 L. R. A. 430; 80 N. W. 807; 48 N. W. 798; 10 W. Va. 507; 22 Gratt. 854; 30 N. W. 31; 82 Pac. 166; 57 Pac. 62; 62 N. W. 857; 100 N. W. 130; 12 Mont. 474; 62 N. W. 913; 47 N. W. 536; 39 N. E. 534; 10 N. W. 91; 18 Atl. 397; 67 N. W. 775; 17 N. W. 726; 71 N. W. 463; 59 N. E. 309; 74 N. E. 964; 79 N. E. 905; 94 N. E. 779; 101 N. E. 843; 147 N. W. 618; 20 S. W. 900; 13 S. E. 77; 24 S. E. 393; 43 N. J. L. 300; 69 Pac. 253; 127 U. S. 399, 32 L. Ed. 196; 8 How. 235, 12 L. E. 1061; 89 Fed. 932; 23 So. 183; 78 Pac. 392; 44 S. E. 896; 74 N. W. 269; *Id.* 270; 90 N. Y. 16; 107 Pac. 292; 141 Pac. 243; 19 Atl. 77; 47 N. W. 587; 53 N. W. 727.

2. Appellees were entitled to the penalty imposed by the court. The only demand ever made of appellant before suit was filed or afterwards, was for the amounts

mentioned in the amendments to the complaints, and for these amounts judgment was rendered.   102 Ark. 675.

HART, J.   J. L. Burns and M. F. Billington, partners, as Burns & Billington, instituted this action against the Great Southern Fire Insurance Company to recover on two policies of fire insurance.   The policies covered certain rice belonging to the insured, and no question is raised as to the amount recovered.   At the time the contract of insurance was made, there was a chattel mortgage on the rice which was executed by Billington.   Doctor Burns procured the policies of insurance sued upon. An application was made to Freeze & Cole, insurance agents, who occupied offices in the same building adjoining those of the insured.   The policies were issued upon the oral application of Doctor Burns, and no inquiry was made by the insurance agents as to the condition of the title of the property, or as to whether or not there was any mortgage upon it.   The insurance agents selected the company in which the insurance was to be written, and kept the policies in their safe until after the fire occurred. The insured paid the premiums at the time the policies were issued, and it was only when they were making out the proof of loss that the insurance company ascertained that there was a chattel mortgage on the property insured, and upon that ground they refused payment.   The policies were in the standard form and contained a provision that they were made and accepted subject to conditions and stipulations printed on the back thereof. Among the provisions printed on the back is the following:

"This entire policy, unless otherwise provided by agreement endorsed hereon, or added hereto, shall be void, * * * if the subject of insurance be personal property, and be or become encumbered by chattel mortgage."

It is admitted that Doctor Burns knew there was a chattel mortgage on the rice at the time he applied for the insurance, and that he did not make any disclosures concerning it because he was not asked about it, and did not know that it was material to the risk.   He never read

the policies after they were issued, and neither he nor his partner knew that the policies contained the clause above quoted until after the loss had occurred.

Defendant requested the court to instruct the jury to return a verdict in its favor. This the court declined to do, and, over the objections of the defendant, instructed the jury to return a verdict in favor of the plaintiffs. From the judgment rendered, the defendant has duly prosecuted an appeal to this court.

Counsel for the defendant contends that the plaintiffs by accepting the policies of fire insurance containing the clause providing that they ''shall be void if the property is or becomes encumbered by a chattel mortgage,'' are charged with notice of the condition, and are bound thereby; on the other hand it is contended by counsel for the plaintiffs that where a policy is issued by an insurance company without a written application, the company must be held to have waived the condition of the policy as to encumbrances by chattel mortgages.

The precise issue raised by the appeal has never been decided by this court. In the case of *Rhea* v. *Planters Mutual Ins. Co.,* 77 Ark. 57, and that of the *Home Insurance Company* v. *Driver,* 87 Ark. 171, and other cases, this court has held that where there is a warranty against encumbrances, the insurer is protected by a condition against encumbrances inserted in the policy.

So, too, in the case of *German American Insurance Co.* v. *Humphrey,* 62 Ark. 348, the court held that where a policy of fire insurance provides that it shall be void if the property insured afterward becomes encumbered by a mortgage, the giving of a mortgage on the property renders the policy void. In that case, however, the court said that there is a marked difference between a waiver of conditions made before and those made after the issuance of the policies.

In the case of *Phoenix Insurance Co.* v. *Public Parks Amusement Co.,* 63 Ark. 187, the court held that a condition against encumbrances is waived by the acts of the agents of the insurer who, having authority to waive con-

ditions, and knowing that the property was encumbered, attached to the policy permits for additional concurrent insurance upon which additional policies were issued.

The decisions of the courts of last resort of the various States are in irreconcilable conflict upon the question of whether, under the circumstances detailed above, the policy was invalid from the beginning because of the anti-mortgage clause. It is insisted by counsel for the defendant that the policies sued on were the standard form now in common use, and that the insured was required to disclose the nature and extent of his interest in the property because this was a matter which would largely influence the insurance company in taking or rejecting the risk and estimating the premium; that the clause in question was inserted in the policies by the insurance company, and that the insured was bound by the terms of the policies when they accepted them; that under the facts disclosed by the record, there could be no waiver of the conditions of the policies; and that the conditions inserted in the policies were just as binding on the insured as would have been conditions inserted in any other contract.

A leading case sustaining their contention is that of *Parsons, Rich. & Co.* v. *Freeman P. Lane,* 97 Minn. 98, 7 Am. & Eng. Ann. Cases 1144. In that case the court cites and discusses many of the cases on both sides of the question.

*Glen Falls Insurance Co.* v. *Michael* (Ind.), 74 N. E. 964, 8 L. R. A. (N. S.) 708, is a leading case sustaining the position assumed by the plaintiffs, that where the insurer issues a policy upon an oral application without making any inquiries as to the nature of the title of the property, it will be presumed to have written the policy on its own knowledge, and, hence, to have waived the condition which would have invalidated the policy.

We have carefully examined several of the leading cases on both sides of the question, and, it being a new one in this State, we are at liberty to decide it in accordance with what we think to be the better rule, and that

which we deem to be the more reasonable and more in accord with a spirit of fairness and justice.

It is true, as contended, that the policies were in the standard form, but the condition upon which the policy is now sought to be invalidated was not in the body of the policy, but was printed upon the back thereof. It is also true that a contract of insurance, like any other contract, should be given force and effect according to its terms; but it is equally well settled that provisions in the printed forms inserted by the insurance company for its own benefit may be waived. Forms for insurance policies are usually prepared by the insurance companies for general use and without reference to particular cases. The insured has little voice in framing the terms of his insurance, and none whatever in preparing the form of the policy issued. He must accept the policy as it is prepared and tendered to him by the insurance company.

As a rule, the insured has no knowledge of the necessity of disclosures which long experience has taught insurance companies are necessary for their protection, or of what disclosures are important or material. In ordinary contracts of importance, the terms are agreed upon after careful consideration and discussion by the contracting parties and contracts are usually prepared in duplicate and carefully examined by the parties before they are signed.

As we have already seen, insurance contracts are prepared by the insurance company, and the terms used are the result of long experience on their part of things necessary to guard their interests. It is not the custom of fire insurance companies to place the policy to be issued by it before the person whose property is to be insured prior to its delivery to him. He has no opportunity to examine the many printed conditions and stipulations contained on the back of the policy until he has paid the premium for the insurance and the policy has been delivered to him. Under such circumstances, it ought not to be said that he was bound by the conditions and stipulations

in the policy declaring that the policy should be void if there was any encumbrance against the property where he had no knowledge of such condition, and was not aware that the giving of a mortgage on the property insured in any way affected the risk.

(1)   In this case, the anti-mortgage clause was not in the body of the policy, but was in the printed conditions on the back of the policy along with numerous other conditions and stipulations concerning which no inquiry was made by the agents of the insurance company. · The policies sued on were issued upon an oral application, and the agents of the insurance company made no inquiries of the plaintiffs concerning liens or encumbrances on the property.   No stipulations or statements in reference thereto were made by the assured, and they had no knowledge that such information was material, or that the policies subsequently issued would contain any provision in reference thereto.

They were not aware that if the insurance company knew that any mortgage had been given on the property, it would decline the risk.   They paid, and the agents of the insurance company received the premium, and the property was destroyed by fire during the life of the policies, and before the plaintiffs had any notice whatever of the anti-mortgage clause in the policy or that such condition would invalidate the policy if there was a mortgage on the property when the policy was issued.   The agents who issued the policies had authority to waive conditions in the policy.

No question is raised, but that the loss was an honest one, and none but that the plaintiffs are entitled to recover the amount for which judgment was given if the defendant was liable.   Under such circumstances, to urge the conclusion that the anti-mortgage clause avoided the policies would be to impute to the insurance company a fraud intended to deceive the assured by issuing policies not binding as contracts of insurance, although it re-

ceived and accepted therefor the premiums, knowing that the assured believed the contracts to be valid.

The defendant asked for a directed verdict, and no other instructions were asked by it. The effect of a directed verdict would have been to hold that the contract of insurance was void from the beginning, and that the policies never in fact had any force or validity because of the anti-mortgage provisions inserted therein by the insurance company without the knowledge of the insured. If that view should be adopted, the insurance company would not only have wrongfully received and accepted the premium from the assured, but would have also misled them into the belief that their property was insured when in fact it was not. So, we think the court was justified, under the circumstances, in finding that the insurance company had waived the anti-mortgage provision in the policies. *Allesina* v. *London & Liverpool & Globe Ins. Co.,* 45 Oregon 441, 2 Am. & Eng. Ann. Cas. 284; *Farmers & Merchants Ins. Co.* v. *Mickel,* 72 Neb. 123, 9 Am. & Eng. Ann. Cas. 993; *Humble* v. *German Alliance Ins. Co.,* 85 Kan. 140, 116 Pac. 472, Am. & Eng. Ann. Cas., 1912 D. 630; *Lancaster Ins. Co.* v. *Monroe* (Ky.), 39 S. W. 434; *Dooly* v. *Hanover Fire Ins. Co.* (Wash.), 58 Am. St. Rep. 26; *Hanover Fire Ins. Co.* v. *Bohn* (Neb.), 58 Am. St. Rep. 719; *Georgia Home Ins. Co.* v. *Holmes* (Miss.), 65 Am. St. Rep. 611; 3 Cooley, Briefs on Insurance, 2630, 2631.

The complaint in this case, as originally filed, asked for the amounts named in the face of the policies, $2,000 on one, and $2,500 on the other. After the fire, plaintiffs had a conference with the adjuster of the insurance company, and arrived at the amount of the losses which was agreed upon at $1,517.04 upon one policy and $1,896.30 on the other. After this had been agreed upon, the agents of the insurance company found out that a mortgage existed on the property at the time the policies were issued, and on this account refused payment. As soon as plaintiffs discovered the mistake in their original complaint,

they filed an amendment thereto in which they asked judgment for the amount which had been agreed upon between them and the agents of the insurance company. They recovered judgment for this amount.

(2) Under this state of facts, it is insisted by counsel for the insurance company that the plaintiffs are not entitled to the attorney's fees and penalty provided for under the Acts of 1905, but we do not agree with them in this contention. Soon after the original complaint was filed, it was amended and judgment was asked for the amount which had been agreed upon between the plaintiff and the adjuster of the insurance company as the amount of loss sustained by reason of the fire. Judgment was recovered against the insurance company for this amount. If the insurance company had desired to avoid the penalty and attorneys' fee provided for by the statute, it should have offered to confess judgment for the amount sued for in the amended complaint. It did not do so; on the other hand, it denied all liability under the policy. The plaintiffs having recovered the amount sued for in the amended complaint, the court properly allowed the attorney's fee and penalty provided for by the statute. *Queen of Ark. Ins. Co.* v. *Milham,* 102 Ark. 675; *Queen of Ark. Ins. Co.* v. *Bramlett,* 103 Ark. 1.

The judgment will be affirmed.